(SPACE BELOW FOR FILING STAMP ONLY)

LAW OFFICES OF
**GLASS & GOLDBERG**
A LAW CORPORATION

21700 OXNARD STREET, SUITE 430
WOODLAND HILLS, CALIFORNIA 91367-3665
TELEPHONE (818) 888-2220
TELECOPIER (818) 888-2229

Robert M. Berger, SBN 158765
Dixon L. Gardner, SBN 213119

Attorneys for Creditor
PNCEF, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>**GARDENWALK CINEMAS, LLC,**<br><br><br>**Debtor.** | ) **CASE NO: 8:10-bk-10730 RK**<br>) **CHAPTER 11**<br>)<br>)<br>) **DECLARATION OF ROBERT M.**<br>) **BERGER IN SUPPORT OF**<br>) **EMERGENCY MOTION FOR RELIEF**<br>) **FROM STAY AND TEMPORARY**<br>) **RESTRAINING ORDER**<br>)<br>)<br>) <u>Hearing</u><br>) DATE: July 15, 2010<br>) TIME:  3:30 p.m.<br>) DEPT:  5D |

I, Robert M. Berger, declare:

1.     I am an attorney licensed to practice law before all of the courts of the State of

California and am admitted to practice before the United States Bankruptcy Court for the Central

District of California.  I am an associate in the law offices of Glass & Goldberg, APLC, attorneys for

record for secured creditor PNC Equipment Financial, LLC ("PNCEF") the moving party herein.  I

have personal knowledge of all facts herein and if called upon to do so I could and would testify to

such facts.

1

2.      Movant filed its Motion for Relief from Stay on June 23, 2010.  A true and correct copy of Movant's Motion for Relief is attached hereto as Exhibit "1" and incorporated by this reference.  Movant's Motion for Relief is set for hearing on July 27, 2010 before this Court.

3.      On July 9, 2010, I received a telephone call from James Goddard, counsel for Creditor Citigroup Global Markets Realty Corp. (Citi) who is the present owner of Anaheim Gardenwalk Center ("Center") where Debtor's theater was located.  Mr. Goddard informed me that Bruce Sanborn, Debtor's manager, had informed Citi that in light of the Court's June 16, 2010 ruling to vacate the real property that Debtor was going to remove all of the personal property.  Mr. Goddard further informed me that a moving company had in fact arrived at the Center that morning and had begun to remove personal property.  Because the moving company did not have the center listed as an additional insured Citi refused to allow them to continue.

4.      Subsequently on July 9, 2010, I had a telephone conversation with Debtor's counsel, Helen Shaver, regarding the removal of Movant's personal property from the Center.  Ms. Shaver confirmed that Debtor's intent was to remove some of the equipment, specifically movie projectors and related equipment, in which Movant has a security interest before July 28, 2010 and store it for a short time period.  She informed me that possession would be given either to Mr. Sanborn for use at Sanborn Theatres, Inc. or other third parties.

5.      When I asked Ms. Shaver who was going to move the equipment she did not know.  She informed me that Debtor was speaking to several different moving companies.

6.      When I asked Ms. Shaver where the equipment was going to be stored she did not know.

7.      On July 9, 2010 I confirmed my conversation with Ms. Shaver with a facsimile letter.  A true and correct copy of which is attached hereto as Exhibit "2" and incorporated by this reference.

2

8.     At the time of drafting this declaration I have not heard a response from Ms. Shaver to my July 9, 2010 letter.

9.     On July 12, 2010 I had another conversation with Citi's counsel Mr. Goddard who informed me that Citi preferred to have the equipment stay at the movie theater at the Center as the new lessee of the theater was interested in purchasing some or all of the equipment.

10.    Thereafter on July 12, 2010 Mr. Goddard sent me an email that United Riggers had showed up at the Center on July 12, 2010 and informed the property manager that they would be back on Wednesday, July 14, 2010 at 2:00 p.m. to begin removal of the equipment.

I declare under penalty of perjury under the laws of the State of California and under the laws of the United States that the foregoing is true and correct.  Executed this 12th day of July, 2010 at Woodland Hills, CA.


/S/ Robert M. Berger, Declarant

# EXHIBIT 1

000004

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number

DIXON L. GARDNER #213119
ROBERT M. BERGER #158765
GLASS & GOLDBERG
21700 OXNARD STREET, SUITE 430
WOODLAND HILLS, CA 91367-3665
(818) 888-2220
(818) 888-2229

[ ] *Individual appearing without counsel*
[X] *Attorney for:* PNCEF, LLC

FOR COURT USE ONLY

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re: GARDENWALK CINEMAS, LLC

Debtor(s).

CHAPTER: 11

CASE NO.: 8:10-bk-10730-RK

DATE: July 27, 2010
TIME: 10:30 am
CTRM: 5D
FLOOR:

# NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT: PNCEF, LLC                          )
### (Personal Property)

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. Hearing Location:    [ ] **255 East Temple Street, Los Angeles**    [X] **411 West Fourth Street, Santa Ana**

   [ ] **21041 Burbank Boulevard, Woodland Hills**    [ ] **1415 State Street, Santa Barbara**

   [ ] **3420 Twelfth Street, Riverside**

3. a. [X] This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

   b. [ ] This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served:

   [ ] at the hearing    [ ] at least _____ court days before the hearing.

   (1) [ ] A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

   (2) [ ] A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court.

   (3) [ ] A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1M.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

F4001MPP

1

Motion for Relief from Stay (Personal Property) - *Page 2 of* ____          **F 4001-1M.PP**

| In re                    (SHORT TITLE)       | CHAPTER: 11 |
|---------------------------------------------|-------------|
| GARDENWALK CINEMAS, LLC                     |             |
|                                Debtor(s).   | CASE NO.: 8:10-bk-10730-RK |

5. If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated: JUNE 17, 2010

GLASS & GOLDBERG
*Print Law Firm Name (if applicable)*

DIXON L. GARDNER
*Print Name of Individual Movant or Attorney for Movant*

/S/ DIXON L. GARDNER
*Signature of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                      000006                      **F 4001-1M.PP**
EXHIBIT 1

Motion for Relief from Stay (Personal Property) - *Page 3 of* ____   **F 4001-1M.PP**

| In re                               (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| GARDENWALK CINEMAS, LLC | |
| Debtor(s). | CASE NO.: 8:10-bk-10730-RK |

## MOTION FOR RELIEF FROM STAY
### (MOVANT: PNCEF, LLC                              )

1. **The Property at Issue:** Movant moves for relief from the automatic stay with respect to the following personal property (the "Property"):

   ☐ Vehicle *(describe year, manufacturer, type, and model)*:

   *Vehicle Identification Number:*
   *Location of vehicle (if known):*

   ☒ Equipment *(describe manufacturer, type, and characteristics)*: See description at Exhibit "0" for Lease No. 110901000
   See description at Exhibit "0" for Lease No. 111428000
   *Serial number(s)*: None
   *Location (if known)*: 13 Corporate Plaza, #110 Newport Beach, CA 92660; 321 W. Katella Ave, Anaheim, CA 92802
   41090 Calif. Oaks Rd, Murrieta, CA 92562; 27531 Ynez Rd, Temecula, CA 92591;

   ☐ Other Personal Property *(describe type, identifying information, and location)*: 888 Marsh St, San Luis Obispo, CA 93401

2. **Case History:**

   a. ☒ A voluntary   ☐ An involuntary   petition under Chapter  ☐ 7 ☒ 11 ☐ 12 ☐ 13
      was filed on *(specify date)*: January 21, 2010

   b. ☐ An Order of Conversion to Chapter   ☐ 7 ☐ 11 ☐ 12 ☐ 13
      was entered on *(specify date)*:

   c. ☐ Plan was confirmed on *(specify date)*:

   d. ☐ Other bankruptcy cases affecting this Property have been pending within the past two years.  See attached Declaration.

3. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

      (1) ☒ Movant's interest in the Property is not adequately protected.

         (a) ☒ Movant's interest in the collateral is not protected by an adequate equity cushion.

         (b) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

         (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).

         (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted in this case.

      (2) ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

         (a) ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.

         (b) ☐ The Property was transferred to Debtor(s) either just before the bankruptcy filing or since the filing.

         (c) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.

         (d) ☐ Other bankruptcy cases have been filed asserting an interest in the same Property.

         (e) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) has been filed.

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Personal Property) - *Page 4 of* ___          **F 4001-1M.PP**

| | |
|---|---|
| In re                    (SHORT TITLE)<br>GARDENWALK CINEMAS, LLC<br><br>                                              Debtor(s). | CHAPTER: 11<br><br>CASE NO.: 8:10-bk-10730-RK |

(3) ☐  *(Chapter 12 or 13 cases only)*

    (a) ☐ Postconfirmation plan payments have not been made to the standing trustee.

    (b) ☐ Postconfirmation payments required by the confirmed plan have not been made to Movant.

(4) ☐ The lease has been rejected or deemed rejected by operation of law.

(5) ☐ For other cause for relief from stay, see attached continuation page.

  b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

5. **Evidence in Support of Motion:**    *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

  a. ☒ Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

  b. ☐ Movant submits the attached supplemental Declaration(s) under penalty of perjury, to provide additional admissible evidence in support of this Motion.

  c. ☐ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor(s)'s Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _____ .

  d. ☐ Other evidence *(specify)*:

6. ☐ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following** *(specify forms of relief requested)*:

1. ☒ Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to repossess and sell the Property.

2. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

3.   Additional provisions requested:

  a. ☒ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

  b. ☒ That the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

  c. ☐ That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER)*.

  d. ☐ For other relief requested, see attached continuation page.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                                                          **F 4001-1M.PP**

000008                                      EXHIBIT    **1**

Motion for Relief from Stay (Personal Property) - *Page 5 of* ____    **F 4001-1M.PP**

| In re                    (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| GARDENWALK CINEMAS, LLC | |
| Debtor(s). | CASE NO.: 8:10-bk-10730-RK |

4.   If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: June 17, 2010

Respectfully submitted,

PNCEF, LLC
*Movant Name*

GLASS & GOLDBERG
*Firm Name of Attorney for Movant (if applicable)*

By: /S/ DIXON L. GARDNER
*Signature*

Name: DIXON L. GARDNER
*Typed Name of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

000009

**F 4001-1M.PP**

EXHIBIT **1**

Motion for Relief from Stay (Personal Property) - *Page 6 of* _____          **F 4001-1M.PP**

| In re (SHORT TITLE)<br>GARDENWALK CINEMAS, LLC | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NO.: 8:10-bk-10730-RK |

## PERSONAL PROPERTY DECLARATION
### (MOVANT: <u>PNCEF, LLC</u>                    )

I, <u>LISA M. MOORE</u>                                              , declare as follows:
      *(Print Name of Declarant)*

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the personal Property that is the subject of this Motion ("Property") because *(specify)*:

     ☐ I am the Movant and owner of the Property.

     ☐ I manage the Property as the authorized agent for the Movant.

     ☒ I am employed by Movant as *(state title and capacity)*:  Senior Counsel

     ☐ Other *(specify)*:

2. I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to loans, leases, or extensions of credit given to Debtor(s) concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. The Property that is the subject of this Motion is:

     ☐ Vehicle *(describe manufacturer, type, model, and year)*:

         *Vehicle Identification Number:*
         *Location of vehicle (if known):*

     ☒ Equipment *(describe manufacturer, type, and characteristics)*:See description at Exhibit "0" for Schedule No. 11090100
         See description at Exhibit "0" for Schedule No. 111428000
         *Serial number(s):* None
         *Location (if known):*Equipment at Exhibit "0" is at 13 Corporate Plaza, #110 Newport Beach, CA 92660; 321 W. Katella
         Ave, Anaheim, CA 92802; 41090 Calif. Oaks Rd, Murrieta, CA 92562; 27531 Ynez Rd, Temecula, CA 92591; 888 Marsh St.
     ☐ Other Personal Property *(describe type, identifying information, and location)*:San Luis Obispo, CA 93401.

4. Debtor(s) ☐ listed the Property on Schedule B ☐ did not list the Property on Schedule B.

5. The nature of Debtor's(s') interest in the Property is:

   a. ☐ Sole owner

   b. ☐ Co-owner

   c. ☒ Lessee

   d. ☐ Other *(specify)*:

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                    000010                    **F 4001-1M.PP**

EXHIBIT 1

Motion for Relief from Stay (Personal Property) - *Page 7 of* ____    **F 4001-1M.PP**

| In re                          (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| GARDENWALK CINEMAS, LLC | |
| Debtor(s). | CASE NO.: 8:10-bk-10730-RK |

6. The lease was rejected on _____ *(specify date)*:

   a. ☐ by operation of law.

   b. ☐ by Order of the Court.

7. Movant has a perfected security interest in the Property.

   a. The Property is a motor vehicle, boat, or other property for which a Title Certificate is provided for by state law. True and correct copies of the following items are attached to this Motion:

     (1) ☐ Certificate of Title *("Pink Slip")* attached as Exhibit _____ .

     (2) ☐ Vehicle or other Lease Agreement attached as Exhibit _____ .

     (3) ☐ Security Agreement attached as Exhibit _____ .

     (4) ☐ Other evidence of perfection attached as Exhibit _____ .

   b. The Property is equipment, intangibles, or other personal property for which a Title Certificate is not provided for by state law. True and correct copies of the following items are attached:

     (1) ☒ Security Agreement attached as Exhibit 1, 2, 3 . Master Lease Agreement, Lease Nos. 110901000 and 111428000

     (2) ☒ UCC-1 Financing Statement attached as Exhibit 7, 8 , as recorded on *(specify date)*: May 28, 2008

     (3) ☐ UCC Financing Statement search results attached as Exhibit _____ .

     (4) ☐ Results of search of recorded or filed leases attached as Exhibit _____ .

     (5) ☐ Other evidence of perfection of a security interest attached as Exhibit _____ .

   c. The Property is consumer goods. True and correct copies of the following items are attached:

     (1) ☐ Credit Application attached as Exhibit _____ .

     (2) ☐ Purchase Agreement attached as Exhibit _____ .

     (3) ☐ Account Statement showing payments made and balance due attached as Exhibit _____ .

     (4) ☐ Other evidence of perfection of a security interest *(if necessary under state law)* attached as Exhibit _____ .

   d. ☐ Other liens against the Property are set forth on the attached continuation page.

8. Status of Movant's debt:

   a. A true and correct copy of the promissory note or other document that evidences the debt owed by Debtor(s) to Movant is attached as Exhibit 1, 2, 3, 4 .

   b. Amount of current monthly payment: $ 29,615.68 for Lease No. 110901000 ("Lease 1"); $2,568.02 for Lease No. 111428000 ("Lease 2")

   c. Number of payments that have come due and were not made: 11for Lease 1; 3for Lease 2 (6/8/09 -5/28/10)

   d. Last payment received on *(specify date)*: Partial payments on May 18, 2010 for Lease 1 and Lease 2.

9. Attached hereto as Exhibit 5 is a true and correct copy of a POSTPETITION payment history that accurately reflects the dates and amounts of all payments made by the Debtor(s) since the petition date.

10. Amount of Movant's debt:

   a. Principal:                                                                  $1,347,427.37 _____
   b. Accrued Interest:                                                    $ _____
   c. Costs (Attorney's Fees, Late Charges, Other Costs):  $ 44,439.75 _____
   d. Advances (Property Taxes, Insurance):                    $ _____
   e. TOTAL CLAIM as of June 8, 2010 :                         $1,391,867.12 _____

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Personal Property) - *Page 8 of* _____          **F 4001-1M.PP**

| In re          (SHORT TITLE)<br>GARDENWALK CINEMAS, LLC | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NO.: 8:10-bk-10730-RK |

f.   Future payments due by time of anticipated hearing date *(if applicable)*: June 28, 2010
An additional payment of $ ___32,183.70_____ will come due on June 28, 2010_____ , and on the 28th___ day of
each month thereafter.  If the payment is not received by the 28th_____ day of the month, a late charge of
$ ___1,609.19___ would be due under the terms of the loan.

11. [X] *(Chapter 7 and 11 cases only)*  The fair market value of the Property is: $ ___432,745.32_____ . This valuation is based
upon the following supporting evidence: Value of Equipment for Lease 1 is $398,065.92 and for Lease 2 is $34,679.40.

a.   [ ]   This is the value indicated for collateral of this year, make, model, and general features in the reference guide most commonly
used source for valuation data used by Movant in the ordinary course of its business for determining the value of this type of
collateral.  True and correct copies of the relevant excerpts of the most recent edition are attached as Exhibit _____.

b.   [ ]   This is the value determined by an appraisal or other expert evaluation.  A true and correct copy of the expert's report or
declarations attached as Exhibit _____.

c.   [ ]   Debtor's(s') admissions in the Schedules filed in the case.  A true and correct copy of the relevant portions of the Debtor's(s')
Schedules are attached as Exhibit _____.

d.   [ ]   Other basis for valuation *(specify)*:

> **NOTE:**   *If valuation is contested, supplemental declarations providing additional foundation for the opinions of value should be
> submitted.*

12. Calculation of equity in Property:

a.   By subtracting the total amount of all liens from the value of the Property as set forth in Paragraph 11 above, I calculate that the
Debtor's(s') equity in the Property is $ ___zero (0)_____ (§ 362(d)(2)(A)).

b.   I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is
$ ___zero (0)_____ (§ 362(d)(1)).

13. [ ]   The fair market value of the Property is declining based on/due to: <u>Aging and use of the collateral by the Debtor.</u>
_____

14. [ ]   *(Chapter 12 or 13 cases only)*  Chapter 12 or 13 case status information:

a.   341(a) Meeting currently scheduled for (or concluded on) the following date:
Confirmation hearing currently scheduled for (or concluded on) the following date:
Plan confirmed at hearing on the following date *(if applicable)*:

b.   Postpetition/preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| | | | | |
|---|---|---|---|---|
| *(Number of)* _____ payment(s) due at $ _____ | each | = | $ _____ |
| *(Number of)* _____ payment(s) due at $ _____ | each | = | $ _____ |
| *(Number of)* _____ late charge(s) at  $ _____ | each | = | $ _____ |
| *(Number of)* _____ late charge(s) at  $ _____ | each | = | $ _____ |

c.   Postpetition/preconfirmation advances or other charges due but unpaid:                                   $ _____
(See attachment for details of type and amount.)

                      TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:   $ _____

*(Continued on next page)*

_____

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Personal Property) - *Page 9 of* ____    **F 4001-1M.PP**

| In re                    (SHORT TITLE)<br>GARDENWALK CINEMAS, LLC<br><br>                                                    Debtor(s). | CHAPTER: 11<br><br>CASE NO.: 8:10-bk-10730-RK |
|---|---|

d.   Postconfirmation/payments due BUT REMAINING UNPAID since plan confirmation *(if applicable)*:

| *(Number of)* _____ payment(s) due at $ _____ each = $ _____ |
| *(Number of)* _____ payment(s) due at $ _____ each = $ _____ |
| *(Number of)* _____ late charge(s) at $ _____ each = $ _____ |
| *(Number of)* _____ late charge(s) at $ _____ each = $ _____ |

e.   Postconfirmation advances or other charges due but unpaid:                             $ _____
     (See attachment for details of type and amount.)

                    **TOTAL POSTCONFIRMATION DELINQUENCY:**              $ _____

f.   ☐  The claim is provided for in the Chapter 12 or 13 Plan. Plan payment history is attached as Exhibit _____.

g.   ☐  See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan *(attach Court Form F 4001-1M.13)*.

15.  ☐  Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

16.  ☐  Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions that were taken after the filing of the bankruptcy petition in this case.

a.   ☐  These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

b.   ☐  For other facts justifying annulment, see attached continuation page.

This declaration incorporates herein the Fact Section of the attached Memorandum of Points and Authorities.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** ____ June 16 ____, **2010**, **at** Cincinnati, Ohio _____ *(city, state)*.

LISA M. MOORE _____                        _Lisa Wilkins_ (signature)
*Print Declarant's Name*                                *Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                    **F 4001-1M.PP**

EXHIBIT 1

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

PNCEF, LLC doing business as PNC EQUIPMENT FINANCE, an Indiana Limited

Liability Company, formerly known as NATIONAL CITY COMMERCIAL CAPITAL

COMPANY, LLC, an Indiana Limited Liability Company ("Plaintiff" or "Movant") hereby

moves this Court for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause

on the grounds that Gardenwalk Cinemas, LLC, a California limited liability company ("Debtor"

or "Defendant Corporation"), has defaulted on a Master Lease Agreement ("MLA"), Equipment

Schedule No. 110901000 ("Schedule 1" or "Lease 1"), and Equipment Schedule No. 111428000

("Schedule 2" or "Lease 2") under which the Debtor has leased certain equipment ("Equipment";

See Exhibit "0" for description of Equipment) from the Movant.  Movant's interest in the

Equipment is not adequately protected, the Equipment's value is declining, Debtor is not making

any adequate protection payments on the Equipment to the Movant, and the Debtor has ceased

payments since June 28, 2009 after the Debtor defaulted on the Lease.  Movant seeks relief

pursuant to 11 U.S.C. § 362(d)(2) on the grounds that the Equipment is not necessary for the

Debtor's effective reorganization.

This motion is brought pursuant to Local Bankruptcy Rules 4001-1 and 9013-1 of the

United States Bankruptcy Court, Central District of California and is supported by the

concurrently filed notice and declarations, as well as other papers and pleadings on file in the

Debtor's bankruptcy case, and such other evidence as may be filed prior to, or presented at, the

hearing(s) in this matter.

### Master Lease Agreement

1.    On or about April 28, 2008, National City Media Finance, a division of NC-4,

entered into a Master Lease Agreement ("MLA") with GARDENWALK CINEMAS, LLC, a

California Limited Liability Company ("Defendant Company") wherein NC-4 agreed from time

to time to lease certain equipment to Defendant Company pursuant to equipment lease schedules

to be entered into thereunder, which Defendant Company intended to utilize as part of its

000014

EXHIBIT 1

business. A true and correct copy of the MLA is attached hereto, marked Exhibit "1", and incorporated herein by reference.

## Schedule 1

2.    On or about May 28, 2008 Defendant Company entered into Equipment Schedule No. 110901000 ("Schedule 1") under the MLA, for the lease of certain equipment described therein. Pursuant to the terms of Equipment Schedule 1, Defendant Company agreed to pay, inter alia, 60 monthly payments of $29,615.68 each, plus applicable taxes, commencing on May 28, 2008 and continuing on the 28th day of each month thereafter for the period of the Lease. A true and correct copy of Equipment Schedule 1 is attached hereto, marked as Exhibit "2", and incorporated herein by this reference.

3.    Plaintiff has performed all the conditions, covenants, and agreements on its part to be performed in accordance with the terms of the MLA and Equipment Schedule 1.

4.    On or about June 28, 2009 Defendant Company defaulted in its payments due under the MLA and Equipment Schedule 1, and although demand has been placed on Defendant Company herein to pay the obligation on the MLA and Equipment Schedule 1, it has failed and refused to do so.   Defendant

5.    Paragraph 14 of the MLA provides that in the event of default, damages shall be equal to the Stipulated Loss Value. Equipment Schedule 1 contains a Stipulated Loss and Value Schedule ("SLVS") wherein the Stipulated Loss Value at various payment stages of the Lease period are set forth. Defendant Company made 14 payments under the MLA and Equipment Schedule 1, and therefore pursuant to the SLVS the damages equal the sum of $1,226,469.53 (86.270% x Capitalized Lessor's Cost of $1,421,664.00) and Plaintiff has duly notified defendants herein of same. A true and correct copy of the invoice evidencing the method of calculation for the stipulated loss value is attached as part of the Exhibit "2" Schedule.

## Schedule 2

6.    On or about May 28, 2008 Defendant Company entered into Equipment Schedule No. 111428000 ("Schedule 2") under the MLA, for the lease of certain equipment described

1

therein. Pursuant to the terms of the Equipment Schedule 2, Defendant Company agreed to pay,
inter alia, 60 monthly payments of $2,767.05 each, plus applicable taxes, commencing on May
28, 2008 and continuing on continuing on the 28th day of each month thereafter for the period of
the Lease. A true and correct copy of Equipment Schedule 2 is attached hereto, marked as
Exhibit "3", and incorporated herein by this reference.

     7.     Plaintiff has performed all the conditions, covenants, and agreements on its part to
be performed in accordance with the terms of the MLA and Equipment Schedule 2.

     8.     On or about June 28, 2009 Defendant Company defaulted in its payments due
under the MLA and Equipment Schedule 2, and although demand has been placed on Defendant
Company herein to pay the obligation on the MLA and Equipment Schedule 2, it has failed and
refused to do so.

     9.     Paragraph 14 of the MLA provides that in the event of default, damages shall be
equal to the Stipulated Loss Value. Equipment Schedule 2 contains a SLVS wherein the
Stipulated Loss Value at various payment stages of the Lease period is set forth. Defendant
Company made 14 payments under the MLA and Equipment Schedule 2, and therefore pursuant
to the SLVS the damages equal the sum of $103,914.35 (83.900% x Capitalized Lessor's Cost of
$123,855.00) and Plaintiff has duly notified defendants herein of same. A true and correct copy
of the invoice evidencing the method of calculation for the stipulated loss value is attached as
part of the Exhibit "3" Schedule.

### Damages

     10.     Pursuant to the terms of the MLA and Schedules 1 and 2, Plaintiff has declared
the entire unpaid balances due under the MLA and Schedules 1 and 2 in the sum of
$1,347,427.37 (Schedule 1 - $1,272,482.69 and Schedule 2 - $74,944.68) and has duly notified
Defendant Company of same. For each account, Plaintiff maintains a Legal Calculation
Summary. Attached hereto, collectively, marked as Exhibit "4", are true and correct copies of
the Legal Calculation Worksheets for the Schedules.

11.    The MLA and Schedules provides that Defendant Company will pay all taxes, fees, and liens levied on the equipment.

12.    The MLA and Schedules provide that Defendant Company will pay all costs and expenses, including reasonable attorneys' fees incurred by Plaintiff in exercising any of its rights or remedies under the Agreements.

### Guaranties

13.    On or about April 29, 2008 SANBORN THEATRES, INC., a California Corporation ("Defendant STI") and ARTHUR BRUCE SANBORN, an individual, aka BRUCE SANBORN, aka A. BRUCE SANBORN ("Defendant Sanborn"; collectively "Defendant Guarantors"), for consideration, executed guaranties wherein they unconditionally guaranteed the payment of all rents, liabilities and other indebtedness now existing and hereafter arising of Defendant Company owed the Plaintiff under any lease agreement entered into between Plaintiff and Defendant Company and all schedules thereto whether executed now or in the future, together with costs and attorneys' fees incurred in the collection thereof and the enforcement of the guaranties.  True and correct copies of the guaranties are attached hereto, collectively, marked as Exhibit "5" and "6", respectively, and are incorporated herein by this reference.

14.    Defendant Company has defaulted under its obligations owed pursuant to the MLA and Equipment Schedules 1 and 2, and although demand has been made by Plaintiff on Defendant Guarantors to pay said sum of $1,347,427.37 plus the other sums due pursuant to the MLA and Equipment Schedules 1 and 2, Defendant Guarantors have refused and continue to refuse to pay said sum or any part thereof, and the sum of $1,347,427.37, together with the other sums due pursuant to the MLA and Equipment Schedules 1 and 2 are due and payable from Defendant Guarantors to Plaintiff.

### Movant's Secured Creditor Status under MLA and Schedules 1 and 2

15.    In Paragraph 15 of the MLA, Defendant Corporation granted Movant a security interest in the Equipment leased under Schedule 1 and Schedule 2 herein. (Exhibits 0, 1, 2, and 3) To protect its interest in the Equipment leased under Schedule 1 as a creditor, Movant filed a



UCC Financing Statement with the California Secretary of State, Filing Number 087159429297, on May 28, 2008 ("UCC-1"). To protect its interest in the Equipment leased under Schedule 2 as a creditor, Movant filed a UCC Financing Statement with the California Secretary of State, Filing Number 087159429318, on May 28, 2008 ("UCC-2"). A true and correct copy of UCC-1 is attached hereto as Exhibit "7" and incorporated herein by reference. A true and correct copy of UCC-2 is attached hereto as Exhibit "8" and incorporated herein by reference.

### Status of Equipment

16.    Pursuant to the terms of the MLA (Exhibit "1"), Schedule 1 (Exhibit "2"), and Schedule 2 (Exhibit "3"), Plaintiff has the right to immediate possession of the leased Equipment and Plaintiff has demanded that Defendants, and each of them, deliver up possession of the Equipment more particularly described in Schedules 1 and 2; however, Defendants, and each of them, have refused and continue to refuse to surrender possession of the Equipment and are presently wrongfully and unlawfully retaining same.

17.    At all times herein mentioned, the Plaintiff was and is the owner of the Equipment more particularly described in the Schedule 1 (Exhibit "2"); Schedule 2 (Exhibit "3"); and Exhibit "0".

18.    Plaintiff is informed and believes that the subject equipment is in possession of Defendants and is located at the following possible business location(s)/theatres:

- **13 Corporate Plaza, #110, Newport Beach, CA 92660**

- **321 W. Katella Avenue, Anaheim, CA 92802**

- **41090 California Oaks Rd, Murrieta, CA 92562**

- **27531 Ynez Rd., Temecula, CA 92591**

- **888 Marsh St. San Luis Obispo, CA 93401**

### Value of the Equipment

19.    As can be seen from the value declaration of Mr. Towles filed concurrently herewith and in support of this Memorandum of Points & Authorities Motion for Relief from

14

000018

EXHIBIT **1**

Stay, the estimate of the value of the Equipment is $432,745.32 (Schedule 1 - $398,065.92 and

Schedule 2 - $34,679.40). However, the Equipment may be worth more as part of a going

business. (Towles Decl. ¶4)

### Movant Lacks Adequate Protection

20.    After March 28, 2009, the Debtor has not made any full payments to Movant to

compensate for the decline in value of the Equipment, even though the Equipment is declining in

value because the Debtor continues to use the Equipment each day.  This Bankruptcy Case

prevents the Movant from recovering the Equipment from the Debtor and from exercising its

remedies under applicable non-bankruptcy law.  The Debtor after March 28, 2009 has made

infrequent partial payments.

21.    Since the Movant is not adequately protected in its Equipment, the Movant is

entitled to relief from the Automatic Stay to exercise its remedies as the owner of the Equipment

as the lessor of the Lease under applicable non-bankruptcy law, including, but not limited to,

initiation of proceedings to recover the Equipment under the Lease.

### ARGUMENT

**A.    Cause Exists Under 11 U.S.C. § 362 For The Court To Grant Movant Relief
From The Automatic Stay**

Pursuant to 11 U.S.C. Section 362(d)(1) and (2), this Court has the power to terminate the

automatic stay for cause:

1.    The Movant lacks adequate protection of its interest in the Equipment, which the

Court is required to provide Movant under 11 U.S.C. Section 363(e), because the Equipment is

depreciating in value each day;

2.    The Debtor has no interest in the Equipment because the Debtor has no legal

relationship with the Movant, except that the Debtor is in wrongful possession of the Equipment;

the Equipment is not necessary to an effective reorganization of the Debtor; the Debtor has not

made any payments to the Movant for the decline in the value of the Equipment; and the Debtor

15          **000019**

acquired the Equipment without this Court's approval during this Bankruptcy Case.  However, Debtor has made several partial payments.

The foregoing facts are sufficient grounds for the Court to terminate the automatic stay against the Debtor with respect to the Equipment.

### III.

### CONCLUSION

For all of the reasons set forth herein, Movant respectfully requests that the Court:

1.      Issue an order granting relief from the automatic stay authorizing Movant to repossess the Equipment and to exercise its remedies, including filing an action to recover the possession of the Equipment, in accordance with applicable non-bankruptcy law;

2.      Waive the ten day waiting period under Bankruptcy Rule 4001(a)(3); and

3.      For such other and further relief as this Court deems necessary and proper.

DATED:  June 17, 2010

GLASS & GOLDBERG

By:/ S / DIXON L. GARDNER,
Attorneys for Movant PNCEF, LLC

16

000020

EXHIBIT **1**

### VALUATION DECLARATION OF THORB C. TOWLES IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, **THORB C. TOWLES**, declare as follows:

1.     I am a Vice-President – Asset Manager for plaintiff, PNCEF, LLC doing business as PNC EQUIPMENT FINANCE, an Indiana Limited Liability Company, formerly known as NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC, an Indiana Limited Liability Company ("Plaintiff""). My office address is: 995 Dalton Avenue, Cincinnati, OH 45203. I have personal knowledge of the following facts and, if required to do so, would testify thereto in a court of law.

2.     As Vice-President – Asset Manager, I am responsible for, among other things, estimating the value of equipment. My duties also include reviewing and maintaining records concerning the cost and value of such equipment and the sale prices of such equipment, when it is sold at private sales and auctions by tracking industry publications that record such sales and auctions. I routinely confer with vendors and asset remarketing companies to review the value of my employer's leased equipment, particularly after a default in payments has occurred.

3.     In my capacity as Vice-President – Asset Manager, I was asked to estimate the value of the Equipment described in the accompanying Personal Property Declaration of Lisa M. Moore in support of the Motion for Relief from Stay, this Equipment is the subject of the Lease described in the instant bankruptcy case in Ms. Moore's declaration.

4.     I estimate the value of the Equipment leased pursuant to the Master Lease Agreement, and Schedule No. 110901000 and identified as the "Schedule 1" and "Lease 1" in the declaration of Lisa M. Moore submitted herewith, to be $398,065.92 if sold on a forced sale basis. These estimates are based upon my review of the invoices for the respective equipment, the original purchase prices of the equipment, communications with vendors who deal in this type of equipment, communications with remarketing companies who might handle the sale of this leased equipment, and my experiences with the past sales history of comparable equipment, both from internal and external sources, during my employment as Vice-President – Asset Manager. However, the Equipment may be worth more if sold as part of a going business.

000021

EXHIBIT **1**

5.    I estimate the value of the Equipment leased pursuant to the Master Lease Agreement, and Schedule No. 111428000 and identified as the "Schedule 2" and "Lease 2" in the declaration of Lisa M. Moore submitted herewith, to be $34,679.40 if sold on a forced sale basis. These estimates are based upon my review of the invoices for the respective equipment, the original purchase prices of the equipment, communications with vendors who deal in this type of equipment, communications with remarketing companies who might handle the sale of this leased equipment, and my experiences with the past sales history of comparable equipment, both from internal and external sources, during my employment as Vice-President – Asset Manager. However, the Equipment may be worth more if sold as part of a going business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 17th day of ~~April~~ June, 2010 at Cincinnati, Ohio.

THORB C. TOWLES, DECLARANT

18

000022

# EXHIBIT 0

000023

**National City.**
MEDIA FINANCE

## EXHIBIT A

### RENTAL SCHEDULE NO. 111428008

This Rental Schedule dated and effective as of May 12, 2008 is attached to and governed by the terms and provisions of the Master Lease Agreement dated April 28, 2008 ("Lease") by and between National City Media Finance, a division of National City Commercial Capital Company, LLC ("Lessor") and Gardenwalk Cinemas, LLC ("Lessee").

All the terms used herein which are defined in the Lease shall have the same meaning herein.

1. The Equipment leased hereunder is as follows:

| Quantity | Description | Serial No. |
|---|---|---|
| 4 | New Dolby Processors CP650DC (Digital Only) | |
| 9 | New Dolby Processors CP650D (Film and Digital) | |
| 10 | BACP SRD Penthouse Readers | |
| 23 | Freight | |

EXHIBIT 0

000024

## Equipment Schedule A
### For
### Lease #110901000
### Dated April 28, 2008

| Quantity | Description | Serial No. |
|---|---|---|
| 2 | BARCO DP3000, DLP CINEMA PROJECTOR | |
| 2 | LENS, ZOOM, MOTORIZED | |
| 3 | LAMP - 6kW USHIO | |
| 1 | TOUCHPANEL | |
| 2 | BARCO DP2000, DIGITAL CINEMA PROJECTOR | |
| 2 | LENS, ZOOM, MOTORIZED | |
| 3 | LAMP - 3kW USHIO | |
| 4 | BASES, CUSTOM, BARCO | |
| 4 | DOLBY SHOW STORE/PLAYER SERVER W/ 1.2 TB, AES | |
| 4 | MONITOR/KEYBOARD/WIRING - INSTALL ACCESSORIES | |
| 2 | DOLBY 3D KIT (BARCO) | |
| 1 | FREIGHT | |
| 40 | BME SLITE S10 XP FX BOXKIT4 | |
| 2 | BME SLITE S10 XP FX BOXKIT1 | |
| 1 | BME C DLITE AEC 12 | |
| 1 | BME FIBERL II TX BASE | |
| 2 | BME FIBERL II RX M-MODE | |
| 2 | BME FIBERL II TX INP M-M | |
| 2 | BME DUMMY DATA PLUG X2 | |
| 12 | BME DUMMY PWR PLUG X5 | |
| 25 | BME CBL PWR WP C20C19 1M5 | |
| 5 | BME CBL WP MDR 5M | |
| 9 | BME CBL SPIDER WP SAME L | |
| 1 | BME PROX BASE UNIT | |
| 2 | BME PROX INPUT MODULE | |
| 1 | BME PROX 32MHZ OUTPUT MODUL | |
| 3 | CBL ASM ILITE DVI-DVI DAT 5M | |
| 4 | ACBL, 2-CDR MM FO, LEMO TO ST, 5F | |
| 2600 | CABLE, 4 CON, FIBER OPTIC, RSR, 50 | |
| 1 | PG, FIBER PATCH PANEL, 6 PORT | |
| 1 | PG, FIBER PANEL CABINET, 36 PORT | |
| 1 | PG, ENCLOSURE, FIBER OPTIC, 12 PO | |
| 1 | PG, ADAPTER PLATE, FIBER OPTIC, 6 | |
| 1 | PG, ADAPTER PLATE, FIBER OPTIC, B | |
| 1 | PG, ENCLOSURE, 16HX12WX6D, NEMA4 | |
| 1 | SUBPLATE, 14.2" X 10.2" HOFFMAN C | |
| 16 | CON,FO,ST,BAYONET,125UM,HOT ME | |
| 1 | MISCELLANEOUS | |
| 9 | BME CBL MULTI PWR WP 20M | |
| 3 | BME CBL PWR WP C20C19 1M5 | |
| 7 | US POWER VEAM UL 10 METER | |
| 2 | US POWER VEAM UL 20 METER | |
| 1 | US LED DISTRO 001 NO/RIGKIT | |
| 4 | US LED DISTRO 001 NO/RIGKIT | |
| 1 | SAST CA, Orange, Anaheim | |

*AAS*
Lessee's Initials

EXHIBIT 0

000025

# EXHIBIT 1

000026

EXHIB. 1

## National City Media Finance
### a division of National City Commercial Capital Company, LLC

## MASTER LEASE AGREEMENT

dated as of April 28, 2008 by and between

Lessor:  National City Media Finance, a division of National City Commercial
Capital Company, LLC
995 Dalton Avenue Cincinnati, OH 45203
Phone: (800) 263-9499

Lessee:  Gardenwalk Cinemas, LLC,
13 Corporate Plaza, Suite 110
Newport Beach, CA 92660
Phone: (949) 640-2370

1.    LEASE. Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor the personal property including intangibles (the "Equipment") described in one or more rental schedules ("Rental Schedules") to this Master Lease Agreement (the "Master Lease Agreement"). Each such Rental Schedule incorporates by this reference, the terms and conditions set forth in this Master Lease Agreement and constitutes a separate lease (the "Lease"). The lease of Equipment under each Lease shall be for such term and such rents as may be agreed to by execution of the Rental Schedules, and this Master Lease Agreement shall control and be effective as to all such Rental Schedules, the same as though set forth therein unless expressly amended or modified in writing for particular Rental Schedules. The term "Equipment" as used in this Master Lease Agreement shall refer to items leased under all Rental Schedules and the terms hereof, unless expressly amended or modified in writing, shall apply equally to all such Equipment.

2.    TERM AND RENT. The initial term ("Initial Term") for each item of Equipment shall be for the period specified in the applicable Rental Schedule, and Lessee shall pay Lessor, throughout the Initial Term for the use of the Equipment, the Rent specified in the applicable Rental Schedule. The Initial Term and Rent with respect to each item of Equipment shall commence as set out in the applicable Rental Schedule. For purposes of this Lease, the term "Rent" as used herein shall mean and include all amounts payable by Lessee to Lessor hereunder.

3.    LATE CHARGES. Time is of the essence in this Lease. If any Rent or other amount due hereunder is not paid within ten days after the due date thereof, Lessor shall have the right to add and collect and Lessee agrees to pay a late charge on, and in addition to, such unpaid Rent for each month or part thereof that such Rent remains unpaid or other charges, equal to five percent of such unpaid Rent or a lesser amount if established by any state of federal statute applicable thereto.

4.    DISCLAIMER OF WARRANTIES. Lessee acknowledges that Lessor is not the manufacturer of the Equipment, nor manufacturer's agent, and Lessee represents that Lessee has selected the Equipment leased hereunder based upon Lessee's judgment prior to having requested Lessor to purchase the same for leasing to Lessee, and Lessee agrees that as between Lessor and Lessee, the Equipment leased hereunder is of a design, size, fitness and capacity selected by Lessee and that Lessee is satisfied that the same is suitable and fit for its intended purposes.    LESSEE FURTHER AGREES THAT LESSOR HAS MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF WHATSOEVER NATURE, DIRECTLY OR INDIRECTLY, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO SUITABILITY, DURABILITY, FITNESS FOR USE AND MERCHANTABILITY OF ANY SUCH EQUIPMENT, THE PURPOSES AND USES OF THE LESSEE THE CHARACTERIZATION OF THE LEASE FOR TAX, ACCOUNTING OR OTHER PURPOSES, COMPLIANCE OF THE EQUIPMENT WITH APPLICABLE GOVERNMENTAL REQUIREMENTS, OR

EXHIBIT 1

000027

EXHIBIT 1

OTHERWISE. Lessee specifically waives all rights to make claim against Lessor herein for breach of any warranty of any kind whatsoever. Notwithstanding the foregoing, Lessee shall be entitled to the benefit of any applicable manufacturer's warranties received by Lessor and to the extent assignable, and Lessor hereby assigns such warranties to Lessee for the term of the applicable Rental Schedule. Lessor shall take such actions as may reasonably be necessary to assign such warranties to Lessee. Lessor shall not be liable to Lessee for any loss, damage or expense of any kind or nature caused directly or indirectly by any Equipment leased hereunder or for the use or maintenance thereof, or for the failure of operations thereof, or for the repairs, service or adjustment thereto, or by any delay or failure to provide any thereof, or by any interruption of service or loss of use thereof or for any loss of business or any other damage whatsoever and howsoever caused. No defect or unfitness of the Equipment shall relieve Lessee of the obligation to pay Rent, or to perform any other obligation under this Lease.

5.    USE, OPERATION AND MAINTENANCE. Lessee shall use the Equipment in the manner for which it was designed and intended, solely for Lessee's business purposes, in accordance with all manufacturer manuals and instructions and in compliance with all applicable laws, regulations and orders. Lessee, at Lessee's own cost and expense, shall keep the Equipment in good repair, condition and working order, ordinary wear and tear excepted, and shall furnish all parts, mechanisms, devices and servicing required therefore and necessary to comply with all applicable health and safety standards. The Equipment, upon return to Lessor, shall be in such condition as to qualify for a maintenance agreement with the manufacturer or such other party as may be acceptable to Lessor, if such agreement is customarily available, without additional cost to Lessor, but nothing contained herein shall require the Lessee to modify or upgrade the equipment. All replacement parts and repairs at any time made to or placed upon the Equipment shall become the property of Lessor. Lessee may, with Lessor's prior written consent, which shall not be unreasonably withheld, make such alterations, modifications or additions to the Equipment as Lessee may deem desirable in the conduct of its business; provided the same shall not diminish the value or utility of the Equipment, or cause the loss of any warranty thereon or any certification necessary for the maintenance thereof, and shall be readily removable without causing damage to the Equipment. Upon return to Lessor the Equipment as to which such alterations, modifications or additions have been made, Lessee, if requested to do so by Lessor, shall remove the same and restore the Equipment to its original condition, reasonable wear and tear only being excepted, and, if not so removed, title thereto shall automatically vest in Lessor. Lessor acknowledges that any data files or software developed or installed by Lessee which is resident on the equipment shall be and remain the property of Lessee, provided however that the Lessor shall have no obligation or responsibility to remove or return same to Lessee.

LESSEE SHALL KEEP THE EQUIPMENT FREE AND CLEAR FROM ALL LIENS, CHARGES, ENCUMBRANCES, LEGAL PROCESS AND CLAIMS. LESSEE SHALL NOT ASSIGN, SUBLET, HYPOTHECATE, SELL, TRANSFER OR PART WITH POSSESSION OF THE EQUIPMENT OR ANY INTEREST IN THIS LEASE, AND ANY ATTEMPT TO DO SO SHALL BE NULL AND VOID AND SHALL CONSTITUTE A DEFAULT HEREUNDER. LESSEE SHALL NOT MOVE THE EQUIPMENT FROM THE LOCATION NOTED IN THE RENTAL SCHEDULES WITHOUT THE PRIOR WRITTEN NOTICE TO LESSOR FIVE DAYS IN ADVANCE OF THE MOVE. NEITHER THIS LEASE NOR ANY INTEREST IN THE EQUIPMENT IS ASSIGNABLE OR TRANSFERABLE BY LESSEE BY OPERATION OF LAW. LESSEE AGREES NOT TO WAIVE ITS RIGHT TO USE AND POSSESS THE EQUIPMENT IN FAVOR OF ANY PARTY OTHER THAN LESSOR AND FURTHER AGREES NOT TO ABANDON THE EQUIPMENT TO ANY PARTY OTHER THAN LESSOR. SO LONG AS LESSEE FAITHFULLY PERFORMS AND MEETS EACH AND EVERY MATERIAL TERM AND CONDITION TO BE PERFORMED OR MET BY LESSEE UNDER THIS LEASE, LESSEE'S QUIET AND PEACEFUL POSSESSION OF THE EQUIPMENT WILL NOT BE DISTURBED BY LESSOR OR ANYONE CLAIMING BY, THROUGH OR ON BEHALF OF LESSOR.

6.    TITLE. The Equipment is and at all times shall remain the sole and exclusive personal property of Lessor (subject to Section 17 hereof). No right, title or interest in the Equipment shall pass to Lessee other than the right to maintain possession and use of the Equipment for the full lease term, conditioned upon Lessee's compliance with the terms and conditions of this Lease. If requested by Lessor, Lessee shall affix to or place on the Equipment, at Lessor's expense, plates or markings indicating Lessor's ownership. Lessee covenants and agrees that the Equipment is, and will at all times, remain the personal property of Lessor (subject to Section 17

EXHIBIT 1

000028

EXHIBIT    1

hereof). If requested by Lessor, Lessee will make reasonable efforts to obtain a waiver on any Equipment that may be deemed a fixture in recordable form, from all persons with a real property interest in the premises wherein the Equipment may be located, waiving any claim with respect thereto. Lessor shall have the right from time to time during normal business hours, with reasonable notice, to enter upon Lessee's premises or elsewhere for the purpose of confirming the existence, condition, and proper maintenance of the Equipment. Lessee agrees that this Master Lease Agreement and any applicable Rental Schedules constitute a true lease. However, if this transaction is deemed to be a Lease intended for security, Lessee grants Lessor a purchase money security interest in the equipment (including any replacements, substitutions, additions, attachments and proceeds).

7.    TAXES.  Lessee shall promptly reimburse Lessor for, or shall pay directly if so requested by Lessor, as additional Rent, all taxes, charges and fees which may now or hereafter be imposed or levied by any governmental body or agency upon or in connection with the purchase, ownership, lease, possession, use or location of the Equipment or otherwise in connection with the transactions contemplated by the Lease, excluding, however, all taxes on or measured by the net income of Lessor, and shall keep the Equipment free and clear of all levies, liens or encumbrances arising therefrom. Lessor shall file, as owner and party responsible for payment of tax, personal property tax return relating to the Equipment unless otherwise provided in writing. Lessee shall promptly reimburse Lessor in full for all property taxes levied on or assessed against the Equipment during the initial Term and all renewals or extensions. Failure of Lessee to promptly pay amounts due hereunder shall be the same as failure to pay any installment of Rent. If Lessee is requested by Lessor to file any returns or remit payments directly to any governmental body or agency as provided for hereunder, Lessee shall provide proof of said filing or payment to Lessor upon request.

8.    LOSS OR DAMAGE OF EQUIPMENT.  Lessee hereby assumes and shall bear the risk of loss for destruction of or damage to the Equipment from any and every cause whatsoever, whether or not insured, until the Equipment is returned to Lessor. No such loss or damage shall impair any obligation of Lessee under this Lease, which shall continue in full force and effect. In event of damage to or theft, loss or destruction of the Equipment (or any item thereof), Lessee shall promptly notify Lessor in writing of such fact and of all details with respect thereto, and shall, within thirty (30) days of such event, at Lessor's option, (a) place the same in good repair, condition and working order or, (b) Lessee shall have the option to, at Lessee's expense, substitute Equipment (or any item thereof) of the identical Manufacture, Make, Model, and Features, unless this option is expressly prohibited in a specific Lease, in good repair, condition and working order and transfer clear title to such replacement property to Lessor whereupon such property shall be subject to this Lease and be deemed the Equipment for purposes hereof; or, (c) pay Lessor an amount equal to the sum of (i) all Rent accrued to the date of such payment, plus (ii) the "Stipulated Loss Value" as set forth in the Rental Schedules, whereupon this Lease shall terminate, except for Lessee's duties under Section 10 hereof, solely with respect to the Equipment (or any item thereof) for which such payment is received by Lessor. Upon payment of the amount set forth in (c), the Rent for such Rental Schedules shall be reduced proportionately. Any insurance proceeds received with respect to the Equipment (or any item thereof) shall be applied, in the event option (c) is elected, in reduction of the then unpaid obligations, including the Stipulated Loss Value, of Lessee to Lessor, if not already paid by Lessee, or, if already paid by Lessee, to reimburse Lessee for such payment, or, in the event option (a) or (b) is elected, to reimburse Lessee for the costs of repairing, restoring or replacing the Equipment (or any item thereof) upon receipt by Lessor of evidence, satisfactory to Lessor, that such repair, restoration or replacement has been completed, and an invoice therefor.

9.    INSURANCE.  Lessee shall keep the Equipment insured against theft and all risks of loss or damage from every cause whatsoever for not less than the greater of the replacement cost, new, or the Stipulated Loss Value of the Equipment and shall carry public liability insurance, both personal injury and property damage, and Lessee shall be liable for all deductible portions of all required insurance. All said insurance shall be in form and amount and with companies satisfactory to Lessor. All insurance for theft, loss or damage shall provide that losses, if any, shall be payable to Lessor, and all such liability insurance shall name Lessor (or Lessor's assignee as appropriate) as additional insured and shall be endorsed to state that it shall be primary insurance as to Lessor. Any other insurance obtained by or available to Lessor shall be secondary insurance. Lessee shall pay the premiums therefor and deliver to Lessor a certificate of insurance or other evidence satisfactory to Lessor that

EXHIBIT 1

000029

EXHIBIT 1

such insurance coverage is in effect; provided, however, that Lessor shall be under no duty either to ascertain the existence of or to examine such insurance policies or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Lessor, that it will give Lessor thirty (30) days written notice prior to the effective date of any alteration or cancellation of such policy. The proceeds of such insurance payable as a result of loss of or damage to the Equipment shall be applied as set out in Section 8 hereof. After thirty days from an event of loss or damage as set out in Section 8 hereof, Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any said insurance policies.

If Lessee fails to maintain the required insurance on the Equipment, or provide proof of same to Lessor, Lessor may at its sole discretion, but shall not be obligated to, obtain insurance to protect Lessor's interest in the Equipment. Lessee agrees to pay Lessor for all costs and expenses which Lessor pays or incurs as a result of Lessee's failure to maintain insurance. Without limitation, Lessee specifically agrees that it will pay the monthly insurance charge, as requested by Lessor at the time payment is due. The insurance charge may include, but not be limited to, the insurance premium paid by Lessor; finance charges on the premium (which may be higher than the rate used to determine Lessee's Equipment rental amount); tracking fees; fees for billing and collecting the insurance premium and related charges; administrative fees; and, other fees resulting from the failure to maintain insurance on the Equipment. Lessee acknowledges that Lessor may keep some or all of these insurance charges, including the billing, tracking and other fees; the finance charges; commissions or reinsurance premiums paid to Lessor or an affiliate of Lessor; and, a profit included in any of these charges. Lessee agrees that the premium and insurance charges assessed by Lessor are likely to be higher than the amounts Lessee would pay to maintain insurance on the Equipment as agreed in this Lease. Lessor's election to obtain insurance to protect the Equipment shall not constitute a waiver of Lessee's breach of its insurance obligations, and Lessor reserves all other remedies provided under this Lease or applicable law.

10.    LESSEE INDEMNITY.  Lessee assumes liability for and shall indemnify, save, hold harmless (and, if requested by Lessor, defend) Lessor, its officers, directors, employees, agents or assignees from and against any and all claims, actions, suits or proceedings of any kind and nature whatsoever, including all damages, liabilities, penalties, costs, expenses and legal fees (hereinafter "Claim(s)") based on, arising out of, connected with or resulting from this Lease of the Equipment, including without limitation the manufacture, selection, purchase, delivery, acceptance, rejection, possession, use or operation of the equipment and claims by third parties resulting from or relating to ownership, return or disposition of the Equipment, and including without limitation Claims arising in contract or tort (including negligence, strict liability or otherwise), arising out of latent defects (regardless of whether the same are discoverable by Lessor or Lessee) or arising out of any trademark, patent or copyright infringement. If any Claim is made against Lessee or Lessor, the party receiving notice of such Claim shall promptly notify the other, but the failure of such person receiving notice so to notify the other shall not relieve Lessee of any obligation hereunder.

11.    TAX INDEMNITY.  Lessee acknowledges that (1) Lessor intends to claim and take the accelerated cost recovery deductions available in the manner and as provided by section 168 and related sections of the Internal Revenue Code of 1986, as amended, and regulations adopted thereunder (the "Code") as in effect on the date hereof (such deductions being referred to hereinafter as "Tax Benefits") and (2) the Rent payable hereunder has been computed upon the assumption that such Tax Benefits shall be available to Lessor. Lessee represents and warrants to Lessor that all of the Equipment is, at and after the time of delivery of the Equipment to the location set forth in the Rental Schedules, new, unless designated otherwise on the Rental Schedules. Lessee further represents and warrants that it has not, and will not at any time from such delivery through the term of this Lease take any action or omit to take any action (whether or not the same is permitted or required hereunder) which will result in the loss by Lessor of all or any part of the Tax Benefits. If as a result of any act, omission or misrepresentation of Lessee, the Tax Benefits are lost, disallowed, eliminated, reduced, recaptured, compromised or are otherwise unavailable to Lessor (any of the foregoing being a "Loss"), Lessee shall promptly pay to Lessor on demand, as additional Rent, an amount which will, after deduction therefrom of all taxes required to be paid in respect of the receipt thereof, enable Lessor to receive the same rate of return that Lessor would have realized had such Loss not occurred, together with any interest, penalties or additions to tax.

EXHIBIT 1

000030

EXHIBIT 1

Upon payment of such amount by Lessee, such act, omission or misrepresentation of Lessee which resulted in a Loss shall not be deemed a default hereunder. Any event which by the term of this Lease requires payment by Lessee to Lessor of the Stipulated Loss Value of the Equipment, shall not constitute the act, omission or misrepresentation of Lessee for purposes of the foregoing sentence. Lessor hereby agrees to exercise in good faith its best efforts (determined in the sole discretion of Tax Counsel of Lessor to be reasonable, proper and consistent with the overall tax interest of Lessor) to avoid requiring Lessee to pay the tax indemnity referred to in this Section 11; provided, however, Lessor shall have the sole discretion to determine whether or not to undertake judicial or administrative proceedings beyond the level of an Internal Revenue Service auditing agent; and provided further, that Lessor shall not be required to take any action pursuant to this sentence unless and until Lessee shall have agreed to indemnify Lessor for any and all expenses (including attorney's fees), liabilities or losses which Lessor may incur as a result of taking such action. For purposes of this Section 11, the term "Lessor" shall include the entity or entities, if any, with which Lessor consolidates its tax return.

12.    RETURN OF EQUIPMENT. Lessee shall give Lessor ninety days written notice prior to the expiration of the Initial Term of its intent to return the Equipment. Upon expiration of the Initial Term or other termination pursuant to the terms of this Lease, Lessee shall immediately return all but not less than all of the Equipment and all related accessories to Lessor, or to such place within the continental United States as Lessee may be instructed by Lessor. The Equipment shall, at Lessee's sole expense, be crated and shipped in accordance with the manufacturer's specifications, freight prepaid and properly insured. If the Equipment, upon its return, is not in good repair, condition and working order, ordinary wear and tear excepted, and has not been maintained in accordance with Section 5 hereof, Lessee shall promptly reimburse Lessor for all reasonable costs incurred to place the Equipment in such condition. Lessor shall promptly notify Lessee if equipment is not in good repair, condition and working order, ordinary wear and tear excepted, and has not been maintained in accordance with Section 5 hereof, and Lessee shall have the right of inspection within a reasonable period of time, not to exceed five days after receiving written notice of such condition from Lessor.

13.    AUTOMATIC RENEWAL. The Lease shall automatically renew for additional three-month terms until notice of termination has been properly given and the Equipment returned in accordance herewith if: (a) written notice as specified in Section 12 hereof is not received by Lessor; or (b) such notice is received by Lessor but the Equipment is not returned upon the expiration of the Initial Term. Lessee shall pay as Rent to Lessor an amount based on the average monthly rent during the Initial Term on the due dates set out in the Rental Schedules until terminated by either party by giving ninety days prior written notice. All terms and conditions of this Lease shall continue in full force and effect during any extension or renewal hereof.

14.    DEFAULT AND REMEDIES. (a) Lessee shall be in default hereunder if: (i) Lessee fails to pay Rent or any other payment required hereunder within ten (10) days of the due date thereof; (ii) Lessee fails to observe, keep or perform any other term or condition of this Lease and such failure continues for thirty days following receipt of written notice thereof from Lessor; (iii) any representation or warranty made by Lessee herein or in any document delivered to Lessor in connection herewith shall prove to be false or misleading; (iv) Lessee defaults under any other obligation to Lessor; (v) Lessee or any guarantor becomes insolvent, dissolves, or assigns its assets for the benefit of creditors, or enters any bankruptcy or reorganization proceeding; (vi) any guarantor of the Lease dies or does not perform its obligations under the guaranty; and/or (vii) Lessee undergoes a change in ownership or control of any type, that in the Lessor's judgment, results in a deterioration of Lessee's creditworthiness. (b) If Lessee is in default, Lessor shall have the right to take any one or more of the following actions: (i) cancel or terminate the Lease or any other agreement that Lessor has entered into with Lessee; (ii) proceed by appropriate court action or actions at law or in equity to enforce performance by Lessee of the terms and conditions of this Lease and/or recover damages for the breach thereof; (iii) by written notice to Lessee, which notice shall apply to all Rental Schedules hereunder except as specifically excluded therefrom by Lessor, declare due and payable, and Lessee shall without further demand, forthwith pay to Lessor an amount equal to any unpaid Rent then due as of the date of such notice plus, as liquidated damages or loss of the bargain and not as a penalty, an amount equal to the Stipulated Loss Value as set forth in the Rental Schedules; (iv) require Lessee to return the Equipment to Lessor as provided in Section 12; and/or (v) exercise any other right or remedy available at law or in equity. Should Lessee fail to return the Equipment within fifteen (15) days of receipt of legal notice, Lessor may, personally, or by its agents, and with or without notice of legal process, enter upon the

Page 5 of 8

EXHIBIT 1

000031

premises where the Equipment is located, without liability for trespass or other damages and repossess the Equipment free from all claims by Lessee. Return or repossession of the Equipment shall not constitute a termination of this Lease unless Lessor so notifies Lessee in writing. With respect to Equipment returned to or repossessed by Lessor, if Lessor has not terminated this Lease, Lessor will, in a commercially reasonable manner, and upon such terms as Lessor may determine in its sole discretion, either sell such Equipment at one of more public or private sales or re-lease the Equipment. The proceeds of sale or re-lease shall be applied in the following order or priority: (i) to pay all Lessor's fees, costs and expenses for which Lessee is obligated pursuant to (c), below; (ii) to the extent not previously paid by Lessee, to pay Lessor its liquidated damages hereunder and all other sums then remaining unpaid hereunder; and (iii) to reimburse Lessee for any sums previously paid by Lessee to Lessor as liquidated damages; and (iv) any surplus shall be retained by Lessor. In the event the proceeds of sale or re-lease are less than the sum of the amounts payable under (i) and (ii), Lessee shall pay Lessor such deficiency, forthwith. (c) Lessee shall be liable for all reasonable legal and collection fees, costs and expenses arising from Lessee's default and the exercise of Lessor's remedies hereunder, including costs of repossessions, storage, repairs, reconditioning and sale or re-leasing of the Equipment. (d) In the event that any court of competent jurisdiction determines that any provision of this Section 14 is invalid or unenforceable in whole or in part, such determination shall not prohibit Lessor from establishing its damages sustained as a result of any breach of this Lease in any action or proceeding in which Lessor seeks to recover such damages. Any repossession sale or re-lease of the Equipment shall not bar an action for damages for breach of this Lease, as hereinabove provided, and the bringing of an action or the entry of judgment against Lessee shall not bar Lessor's right to repossess the Equipment. No express or implied waiver by Lessor of any default shall in any way be, or be construed to be, a continuing waiver or a waiver of any future or subsequent default.

15.    FURTHER ASSURANCES. Lessee agrees, at the request of Lessor, to execute and deliver to Lessor any reasonable financing statements, fixture filings or other instruments necessary for expedient filing, recording or perfecting the interest and title of Lessor in this Lease and the Equipment, agrees that a copy of this Lease and any Rental Schedule may be so filed, and agrees that all costs incurred in connection therewith (including, without limitation, filing fees and taxes) shall be paid by Lessee, and agrees to promptly, at Lessee's expense, deliver such other reasonable documents and assurances, and take such further action as Lessor may request, in order to effectively carry out the intent and purpose of this Lease and Rental Schedules. Additionally, Lessee agrees that where permitted by law, a copy of the financing statement may be filed in lieu of the original. Lessee shall, as soon as practicable, deliver to Lessor, Lessee's future quarterly and annual reports of financial condition, prepared in accordance with generally accepted accounting principles, in a manner consistently applied; which reports Lessee represents and warrants shall be prepared in accordance with Generally Accepted Accounting Principles. Lessee's covenants, representations, warranties and indemnities contained in Sections 7, 10, and 18 hereof are made for the benefit of Lessor and shall survive, remain in full force and effect and be enforceable after the expiration or termination of this Lease for any reason.

16.    ACCEPTANCE OF EQUIPMENT; NON CANCELABLE. Lessee's acceptance of the Equipment shall be conclusively and irrevocably evidenced by Lessee signing the Certificate of Acceptance in the form provided or requested by Lessor and upon acceptance, the Rental Schedules shall be noncancelable for the Initial Term thereof. If Lessee cancels or terminates the Rental Schedules after its execution and prior to delivery of the Equipment or if Lessee fails or refuses to sign the Certificate of Acceptance as to all or any part of the Equipment within a reasonable time, not to exceed ten days, after the Equipment has been delivered, in which event Lessee will be deemed to have cancelled the Rental Schedule, Lessee shall automatically assume all of Lessor's purchase obligations for the Equipment and Lessee agrees to indemnify and defend Lessor from any claims, including any demand for payment of the purchase price for the Equipment, by the manufacturer or seller of the Equipment. In addition thereto, Lessee shall pay Lessor (a) all of Lessor's out-of-pocket expenses and (b) a sum equal to one percent (1%) of the total rents for the lease term as liquidated damages, the exact sum of which would be extremely difficult to determine and is reasonably estimated hereby, to reasonably compensate Lessor for credit review, document preparation, ordering equipment and other administrative expenses. Lessor may apply any advance Rent payments to sums due from Lessee under (a) and (b) above.

17.    ASSIGNMENT. Lessee acknowledges and agrees that Lessor may, at any time, without notice to or consent of Lessee, assign its rights but not its obligations under this Lease and/or mortgage, or pledge or sell

EXHIBIT 1

the Equipment. Such assignee or mortgagee may re-assign this Lease and/or mortgage without notice to Lessee. Any such assignee, buyer, transferee, grantee or mortgagee shall have and be entitled to exercise any and all rights and powers of Lessor under this Lease, but such assignee, buyer, transferee, grantee or mortgagee shall not be obligated to perform any of the obligations of Lessor hereunder other than Lessor's obligation not to disturb Lessee' quiet and peaceful possession of the Equipment and unrestricted use thereof for its intended purpose during the term thereof and for as long as Lessee is not in default of any of the provisions hereof.

Without limiting the foregoing, Lessee further acknowledges and agrees that in the event Lessee receives written notice of an assignment from Lessor, Lessee will pay all Rent and any and all other amounts payable by Lessee under any Rental Schedule to such assignee or mortgagee or as instructed by Lessor, notwithstanding any defense or claim of whatever nature, whether by reason of breach of such Rental Schedule or otherwise which it may now or hereafter have as against Lessor (Lessee reserving its right to make claims directly against Lessor). Lessee agrees to confirm in writing receipt of notice of assignment as may be reasonably requested by assignee or mortgagee.

18.    REPRESENTATIONS AND WARRANTIES. Lessee represents and warrants to Lessor that: (i) the making of this Lease and any Rental Schedule thereto executed by Lessee are duly authorized on the part of Lessee and upon execution thereof by Lessee and Lessor they shall constitute valid obligations binding upon, and enforceable against, Lessee; (ii) neither the making of this Lease or such Rental Schedule, nor the due performance thereof by Lessee, including the commitment and payment of the Rent, shall result in any breach of, or constitute a default under, or violation of, Lessee's certificate of incorporation, by-laws, or any agreement to which Lessee is a party or by which Lessee is bound; (iii) Lessee is in good standing in its state of incorporation and in any jurisdiction where the Equipment is located, and is entitled to own properties and to carry on business therein; and (iv) no approval, consent or withholding of objection is required from any governmental authority or entity with respect to the entering into, or performance of this Lease or such Rental Schedules by Lessee.

Lessee shall provide Lessor a Certified Copy of its Corporate Resolutions and or a Certificate of Incumbency in the form provided by Lessor or such other form that Lessor deems acceptable.

Lessor has the power to enter into this Lease, and its execution has been duly authorized by all necessary corporate action on the part of the Lessor. Lessor is duly and validly organized and existing in good standing under the laws of the state of Indiana and has all power and authority to own its properties and carry on its business in the places where such properties are located and such business is conducted.

19.    NOTICES. Any notice required or given hereunder shall be deemed properly given when provided in writing (i) three (3) business days after mailed first class, overnight, or certified mail, return receipt requested, postage prepaid, addressed to the designated recipient at its address set forth at the heading hereof or such other address as such party may advise by notice given in accordance with this provision or (ii) upon receipt by the party to whom addressed in writing by personal delivery, commercial courier service, fax or other means which provides a permanent record of the delivery of such notice.

20.    DOCUMENTATION. Except for the payment of the Rent set forth in the applicable Rental Schedules, for which invoices are provided as an accommodation to Lessee and not as a condition precedent to payment, Lessor shall use its best efforts to provide Lessee with reasonable documentation, including, statements, tax bills and/or invoices, evidencing payment obligations or reimbursement due to Lessor pursuant to the terms of this Lease.

21.    LESSEE'S OBLIGATIONS UNCONDITIONAL: NO OFFSET. This Lease is a net lease and except as expressly provided for herein, the Lessee shall not be entitled to any abatement or reduction of rent and Lessee hereby agrees that Lessee's obligation to pay all rent and other amounts hereunder shall be absolute and unconditional under all circumstances.

22.    GOVERNING LAW. This Lease and any Rental Schedules thereto are entered into, under and shall be construed in accordance with, and governed by, the laws of the State of Ohio without giving effect to its

EXHIBIT 1

000033

EXHIBIT    1

conflicts of laws principles. The State of Ohio shall have exclusive jurisdiction over any action or proceeding brought to enforce or interpret this Lease or otherwise in connection therewith. LESSEE AND LESSOR EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY.

23. **FINANCE LEASE STATUS:** Lessee agrees that if Article 2A-Leases of the Uniform Commercial Code applies to this Master Lease Agreement and any and all Rental Schedules to this Master Lease Agreement, the Master Lease Agreement and Rental Schedules shall be considered a "Finance Lease" as that term is defined in Article 2A. By signing this Master Lease Agreement and any Rental Schedules, Lessee agrees that either (a) Lessee has reviewed, approved, and received a copy of the supply contract or (b) that Lessor has informed Lessee of the identity of the supplier, that Lessee may have rights under the supply contract, and that Lessee may contact the supplier for a description of those rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY ARTICLE 2A.

24. **SOFTWARE.** The use by Lessee of software associated with the Equipment is subject to the terms of the applicable licensor agreement entered into between the Equipment vendor and the Lessee. Lessor shall have a perfected first security interest in the software license. Lessee shall be entitled to pursue against the software licensor all of Lessee's rights and remedies arising under the applicable license agreement.

25. **MISCELLANEOUS.** The captions of this Lease are for convenience only and shall not be read to define or limit the intent of the provision which follows such captions. This Lease contains the entire agreement and understanding between Lessor and Lessee relating to the subject matter hereof. Any variation or modification hereof and any waiver of any of the provisions or conditions hereof shall not be valid unless in writing signed by an authorized representative of the parties hereto. Any provision of this Lease which is unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Lessor's failure at any time to require strict performance by Lessee or any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith or with any other provision. The term "Lessee" as used herein shall mean and include any and all Lessees who have signed this Lease, each of whom shall be jointly and severally bound thereby.

THIS LEASE IS A NON-CANCELABLE LEASE. THIS LEASE IS SUBJECT TO THE TERMS AND CONDITIONS WRITTEN ABOVE WHICH LESSEE ACKNOWLEDGES HAVING READ. THIS LEASE SHALL BE EFFECTIVE UPON EXECUTION BY LESSEE AND LESSOR.

LESSOR
National City Media Finance,
a division of National City Commercial
Capital Company, LLC

By: _Thomas M Brochet_

Title: _S V P_

Date Accepted: _5 - 28 - 08_

LESSEE
Gardenwalk Cinemas, LLC

By: _A B S_

Title: _Member_

Date Accepted: _4 - 29 - 08_

EXHIBIT 1

000034



## CERTIFICATE OF INCUMBENCY

The undersigned, duly elected and acting as _____ member _____ of Gardenwalk Cinemas, LLC ("Lessee") hereby certifies:

1. That he/she has the power and authority to execute this Certificate of Incumbency on behalf of Lessee.

2. That the following named person(s) are authorized representatives of the Lessee in the capacity set forth opposite each of their names and that each of their signatures are genuine and correct.

3. That, as of the date hereof, the following named person(s) each have proper corporate power and authority to execute and deliver any Lease Agreement between Lessee and National City Media Finance, a division of National City Commercial Capital Company, LLC, any Lease Schedules pursuant thereto and any other related documents.

| Name (print) | Title | Signature |
| --- | --- | --- |
| A. Bruce Sanborn | Member | A.B.S. |

NOTE: THE CORPORATE SECRETARY OR OTHER AUTHORIZED OFFICER OF THE ORGANIZATION MUST SIGN THIS CERTIFICATE AUTHORIZING THE SIGNER TO SIGN.

I hereby attest that this information is true and correct as of this 29th day of April, 2008.

Lessee
Gardenwalk Cinemas, LLC

Signature of Authorized Officer

Wirt Shellman
Name

member
Title

EXHIBIT 1

000035